NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIGH POINT SAFETY AND INSURANCE COMPANY, | : <br> : <br> : |
| Plaintiff, | : <br> : Civil No. 05-5759 (AET) |
| v. | : <br> : **OPINION & ORDER** |
| AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, et al., | : <br> : <br> : |
| Defendants, and | : <br> : |
| TIG INSURANCE COMPANY, | : <br> : |
| Defendant-Garnishee. | : |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter comes before the Court on Defendant American Manufacturers Mutual Insurance Company's ("AMM") Motion for Summary Judgment and Plaintiff High Point Safety and Insurance's ("High Point") Cross-Motion for Summary Judgment. The Court has decided these motions based upon the submissions of both parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the following reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Cross-Motion is granted in part.

II. BACKGROUND

This insurance contract dispute stems from an automobile accident, where two policies

apply. Drew Chebin, an employee of Healthfair Vitamin Centers Inc. ("HVC"), during working hours, took his supervisor Gerald Bunting to view a competitor's store, while driving his father's car. En route, they got into a car accident with Gerald Blank.

HVC was insured under an AMM policy that provides coverage for "any 'auto' you do not own, lease, hire, rent or borrow that is used in connection with your business. This includes 'autos' owned by your 'employees' . . . only while used in your business or your personal affairs." (Def.'s Mot. Summ. J. Ex. D at 16.) Cheben was insured under a High Point policy.[1] (See Def.'s Mot. Summ. J. Ex. C.)

Both policies have an "other insurance" clause altering the obligations of the insurers when another policy applies to the same loss. AMM's policy purports to transform into an "excess" coverage policy, stating AMM will pay only what is "in excess of the amount due from that other insurance . . ." (Def.'s Mot. Summ. J. Ex. D.) High Point's policy states that it shall pay a "proportionate share of the loss" when "other insurance" overlaps in coverage. (Def.'s Mot. Summ. J. Ex. C at 22.)

On July 2, 2001, Blank sued Cheben to recover for his loss from the accident. On October 11, 2005, High Point sued AMM in state court for a declaration that AMM must contribute a *pro rata* share of the cost to defend and indemnify Cheben in the Blank suit. AMM removed the case to this Court, and moved for summary judgment, seeking declarations on the following issues: (1) the AMM's Businessowners Liability form precludes coverage for the

---

[1] Cheben was insured under his father's policy, which covered him as a resident relative and permissive user. (See Def.'s Mot. Summ. J. Ex. C at 19.)

2

Blank suit[2]; (2) the AMM Non-Owned Auto Liability policy is excess of the High Point Policy; and (3) AMM has no duty to defend or indemnify Cheben in the Blank suit.  High Point then cross-moved for summary judgment on the following issues: (1) Cheben acted within the scope of employment, qualifying him for coverage under AMM's Non-Owned Auto Liability policy; and (2) the AMM policy is co-primary, owing coverage along with High Point on a *pro rata* basis.  The Court awards summary judgment declarations as to AMM's issue 1, denies issues 2 and 3, and grants High Point's cross-motion, as to issue 1, and grants in part issue 2.

### III. STANDARD OF REVIEW

A.   Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).  The moving party may cite to the pleadings, deposition, answers to interrogatories, admissions on file, to demonstrate that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law.  Lawyers Title Ins. Corp. v. Philips Title Agency, 361 F. Supp. 2d 443 (D.N.J. 2005).  "When the moving party has pointed to material facts tending to show there is no genuine issue for trial, the 'opponent must do more

---

[2] High Point does not dispute that the portion of AMM's insurance policy entitled Businessowners Liability, without the optional coverage for Hired Auto and Non-Owned Auto Liability does not cover the accident, therefore, summary judgment is granted for AMM's first issue.

than simply show that there is some metaphysical doubt as to the material facts.'" Rossi v. Standard Roofing, Inc., 156 F.3d 452, 466 n.9 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  If, however, the nonmoving party fails to offer evidence exceeding a "mere scintilla" threshold, then the Court shall grant summary judgment in favor of the movant.  See, e.g., Citibank, N.A . v. Hicks, No. Civ.A. 03-2283, 2004 WL 945142, at *6 (E.D. Pa. Apr. 29, 2004).

## IV. DISCUSSION

A.   Cheben Acted Within the Scope of His Employment and Is Covered Under the AMM
     Non-Owned Auto Liability Policy

Plaintiff, in its cross-motion for summary judgment, alleges that Cheben acted within the scope of his employment with HVC at the time of the accident; a condition required for coverage under AMM's Non-Owned Auto Liability policy.[3]  Plaintiff cites deposition testimony by Cheben stating the accident occurred during regular business hours, while he was driving Bunting, his superior at HVC, to a competitor's store to view the store and prices.  Also, Cheben was paid for his work on the day of the accident.

Plaintiff has come forward with sufficient evidence to prove that Cheben was acting within the scope of his employment at the time of the accident, meeting its burden for summary judgment.  See, e.g., Nemchik v. Thatcher Glass Manufact. Co., 203 N.J. Super. 137, 143 (App. Div. 1985).  Defendant has not offered even a scintilla of evidence to counter such facts. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir.

---

[3] AMM's Non-Owned Auto Liability policy covers "any auto you do not own . . . that is used in connection with your business.  This includes autos owned by employees . . . or members of their households but only while used in your business . . ."  (Def. Mot. Summ. J. at 14, 16.)

1993) (holding for the non-moving party to defeat summary judgment it must raise a genuine issue of material fact by "simply. . . exceed[ing] the 'mere scintilla' standard" ). The Court, therefore, determines that Cheben was acting within the scope of his employment and, as such, is covered under AMM's Non-Owned Auto Liability policy.

B.      The High Point and AMM Policies Cover Cheben on a Co-Primary Basis

AMM asserts that if its policy covers Cheben, such coverage is afforded only on an excess basis because High Point covers the same loss. High Point asserts that it only owes a *pro rata* share of liability because AMM covers the same loss. The issue before the Court, therefore, is what percentage of liability to apportion to Plaintiff and Defendant. Both parties cite an "other insurance" clause to justify their asserted reduced liability. Reconciling the differing policy language is an appropriate issue for a court to decide at the summary judgment stage. See, e.g., Adron Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996) (stating the "interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment").

Interpretation of conflicting "other insurance" clauses is not a novel issue. The recent case of CNA Ins. Co. v. Selective Ins. Co., 354 N.J. Super. 369 (App. Div. 2002), dealt with virtually identical facts, and informs the analysis here. In CNA, an employee of Coldwell Banker got into an accident with her personal car while acting in the scope of her employment. Id. at 373. The employee was covered by a Selective Insurance Company ("Selective") auto insurance policy, and Coldwell Banker had a CNA Insurance Company ("CNA") policy covering the same loss. Id. at 377. The CNA policy purported to be excess when there was other available insurance. Id. The issue before the court there, as here, was whether the policies were "co-

5

primary" insurers, or whether CNS was an excess insurer by dint of its "other insurance" clause. Id.

In <u>CNA</u>, the court distinguished true excess policies from primary policies containing an "excess other insurance" clause, stating "[t]he purpose of the [true] excess policy is to protect the insured 'in the event of a catastrophic loss in which liability exceeds the available primary coverage.'" <u>Id.</u> at 379 (quoting 15 Couch on Insurance § 220:32 (3d ed. 1999)). In contrast, a primary policy with an "excess other insurance" clause is "a device which allows the 'primary insurer [to] attempt . . . to limit or eliminate its liability where another primary policy covers the risk.'" <u>Id.</u> at 380 (citing 15 Couch on Insurance § 220:32 (3d ed. 1999)). In <u>CNA</u>, the court held that "a primary insurance policy that contains an excess 'other insurance' clause does not 'transform that primary policy into an excess policy.'" <u>Id.</u> (citing <u>North River Ins. Co. v. Am. Home Assurance Co.</u>, 210 Cal. App. 3d 108 (1989)).

A true excess insurance policy is contingent upon the existence of underlying insurance. <u>Id.</u> at 384. Further, the rates of an excess policy reflect the type and amount of underlying insurance for which it provides overage. No evidence demonstrated that Coldwell Banker benefitted in its premium structure from the existence of the Selective policy covering its employer. <u>Id.</u> Coldwell Banker did not buy primary coverage and then purchase the CNA policy as excess coverage. <u>Id.</u> Further, CNA did not allege that it took the Selective coverage of the employer into consideration when calculating Coldwell Banker's premium.

These facts are directly applicable to the case at bar. High Point's fortuitous coverage of Cheben cannot serve to discharge the responsibility of AMM to insure HVC. There is no evidence that the cost of AMM's premium was contingent on Cheben's High Point policy, or that

AMM took that policy into consideration when calculating the premium.  The High Point policy was not listed on an AMM policy schedule of insurance to provide excess coverage.  In short, there is no evidence that the "excess other insurance" clause was anything more than AMM's "attempt [] to limit or eliminate its liability where another primary policy covers the risk." Id. at 380 (citations omitted).  Because AMM's excess "other insurance" clause does not qualify as a true excess policy, this Court rules that both carriers are co-primary insurers.

C.      AMM and High Point Have an Equal Duty to Defend and Indemnify Cheben

      i.      Duty to Defend

AMM argues, based upon the policy language, that it has no duty to defend or indemnify Blank's suit against Cheben.  AMM cites its policy, which states "[w]hen this insurance is excess, we will have no duty under Businessowners Liability Coverage to defend any claim or 'suit' that any other insurer has a duty to defend." (See Def.'s Mot. Summ. J. Ex. D.) (emphasis added).  Because this Court determines, under CNA, that the AMM policy is not a "true excess" policy, this provision is inapplicable. Therefore, as a co-primary insurer, AMM has a duty to defend the underlying suit along with High Point.  See CNA, 354 N.J. Super. at 384; Pacific Indem. Co. v. Bellefonte Ins. Co., 80 Cal. App. 4th 1226 (4th Dist. 2000) (holding two insurers to be co-primary, and obligated to split defense costs because one insurer's excess "other insurance provision" lacked "indicia of a true excess or umbrella policy").

      ii.     Apportionment of Loss

New Jersey law dictates that High Point and AMM, as co-primary insurers, should split the Cheben's loss on an equal basis, up until the policy limit of High Point– the lower value policy insurer– is exhausted.  See Cosmopolitan Mut. Ins. Co. v. Con't Cas. Co., 28 N.J. Super.

554 (1959) (finding co-primary policies each incurred the same duty to contribute until the lowest policy was exhausted, at which point the remainder would be paid by the greater policies); see also Hartford Accident and Indem. v. Selected Risks Indem. Co., 65 N.J. Super. 328, 335 (1961) (holding two insurance carriers were obliged to equally split the loss because "the crucial factor, in our view, is that both [carriers] are on the same level of liability").

High Point argues that it should be required to pay only a *pro rata* share of the loss. This argument, however, is unpersuasive because High Point's policy states that when another insurer covers the same loss "we'll pay our *proportionate* share of the loss." (Def.'s Mot. Summ. J. Ex. C.) (emphasis added). Proportionate does not necessarily mean *pro rata*.[4] Several definitions of "proportionate" include "a number or quantity in proportion," with proportion defined, among other things, as "a proper or equal share." See, e.g., Merriam Webster's Collegiate Dictionary 997-98 (11th ed. 2005). Construing the ambiguous language against the drafter, as the Court is obliged to do, the Court determines that High Point's policy coincides with New Jersey Supreme Court precedent, and requires High Point to pay an "equal share" of the loss incurred up until the policy is exhausted. See, e.g., In re Estate of Miller, 90 N.J. 210, 221(1982) ("Where an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman."). The Court, therefore, concludes that AMM and High Point are obligated to share equally in the cost of defending and indemnifying Cheben in the Blank suit, until the High Point policy is exhausted.

---

[4] A "pro rata" clause is defined as "[a]n insurance-policy provision . . . contained in the 'other insurance' section of the policy– that limits the insurer's liability to payment of the portion of the loss that the face amount of the policy bears to the total insurance available on the risk." Black's Law Dictionary 1257 (8th ed. 1999).

V. <u>CONCLUSION</u>

For the reasons given above, and for good cause shown,

It is on this 29th day of September 2006,

**ORDERED** that a declaration on Issue 1 of Defendant's Motion for Summary Judgment is **Granted**, and

**ORDERED** that a declaration on Issues 2 and 3 of Defendant's Motion for Summary Judgment is **Denied,** and

**ORDERED** that a declaration on Issue 1 of Plaintiff's Cross-Motion for Summary Judgment is **Granted,** and

**ORDERED** that a declaration on Issue 2 of Plaintiff's Cross-Motion for Summary Judgment is **Granted in part**.

                                                s/Anne E. Thompson
                                        ANNE E. THOMPSON, U.S.D.J.